```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
```

UNITED STATES OF AMERICA,       :
      Plaintiff
                               :

      vs.                       :   CRIMINAL NO. 1:CR-06-041

                               :
CEDRIC D. SIMMONS,
      Defendant              :

## M E M O R A N D U M

### I.   Introduction

We are considering Defendant's motion to suppress crack cocaine found on his person as the result of a traffic stop. At a hearing on May 3, 2006, the Government presented testimony from Police Officers Maley and Rietheimer. The Defendant offered testimony from Chanika Brown and Aleem Shadere Qyshawn Harden. Based on the analysis below, we will deny the motion.

### II.   Background

The testimony of Officers Maley and Rietheimer set forth the following factual background. At approximately 2:39am on January 8, 2006, Officer Maley of the Penbrook Police Department stopped a blue Pontiac van driven by the Defendant, Cedric Simmons, for various traffic violations. When he approached the

vehicle, Officer Maley noticed the odor of burnt marijuana. He took Simmons' license and vehicle information back to his patrol car. Officer Maley proceeded to use his METRO[1] computer system to determine if the Defendant had a prior criminal history. The METRO system disclosed that Simmons was on state parole and had previous arrests for drug and gun violations.

      While Officer Maley was at his patrol car, Officer Rietheimer of the Susquehanna Township Police Departmnet arrived to assist with the traffic stop. Officer Maley had determined that the vehicle was not registered to the Defendant and he requested that Officer Rietheimer obtain the phone number of the van's owner from Simmons. He also either told Officer Rietheimer that he had detected the odor of burnt marijuana or asked Officer Rietheimer to tell him whether he noticed any odors when he approached the vehicle. Officer Rietheimer obtained the number for Chanika Brown, the vehicle's owner, from the Defendant. He noticed an odor of burnt marijuana when he was at the vehicle.

      At approximately 2:48am, Officer Maley attempted unsuccessfully to contact Chanika Brown. He then asked Simmons to exit the vehicle and, because of the Defendant's prior criminal

---

[1] The METRO computer system allows officers to access information regarding an individual's criminal history, probation/parole status, or possible warrants.

history, he performed a pat-down search to determine if Simmons was carrying any weapons. He did not feel any weapons, but he did feel, however, what he believed to be large sums of money in Simmons' front pockets. When he asked the Defendant what was in his pockets, Simmons told him nothing. Officer Maley indicated to the Defendant that he believed that he had money in his pockets. Simmons then acknowledged that he had "a little bit" of money in his pockets.

At some point, Officer Maley was able to speak with Chanika Brown on the Defendant's cell phone.[2] While Officer Rietheimer stayed with the Defendant, Officer Maley took the Defendant's phone to the rear of his patrol car to speak with Brown. He explained the situation to Brown, including that he had detected an odor of marijuana and that he suspected drug activity. Brown informed Officer Maley that Simmons had permission to drive her van at that time. He asked for her consent to search the van and explained that if she did not give consent, he would seek a search warrant. Brown agreed to a search of the van.

During his search of the van, Officer Maley removed an ashtray from the van which contained ash and a very small end of what appeared to be a marijuana cigarette, or blunt. He also

---

[2] Officer Maley was unable to testify as to whether Ms. Brown called the Defendant or if the Defendant called Ms. Brown.

noticed a police scanner, which was on, behind the driver's seat. He again asked Simmons about the money he was carrying and the Defendant told him that his mother gave it to him because he is a "good boy" and that she had just gotten her IRS tax return. Officer Maley then proceeded to field test the end of the alleged marijuana cigarette. It tested positive for marijuana and this was later confirmed by the Pa. State Police crime lab.

      At this point, Officer Maley decided to place the Defendant under arrest. The money, which totaled $2610.00, was removed from Simmons' pockets and an additional cell phone was recovered. Officer Rietheimer searched the Defendant and found approximately seventy-one grams of crack cocaine in the groin area of the his pants. Both Officers Maley and Rietheimer testified that upon approaching the van, there was no marijuana in plain sight and that the Defendant did not show any outward signs of impairment. Officer Maley stated that he did not believe that he asked Simmons for permission to search the van as he had obtained Brown's consent and neither Officer recalled Simmons refusing permission to search the van. Officer Maley also testified that during his conversation with Brown, there was no indication that she was unable to give consent for a search of her vehicle. Officer Rietherimer indicated that he saw Officer Maley search the van once.

4

Chanika Brown related the following testimony. On the evening of January 7, 2006 she was drinking at a bar from approximately 10:30pm until 12:30am on January 8, 2006. She had five or six vodka and cranberry juice drinks, which came in glasses that were about six inches high. Believing her driving would be impaired, she called Simmons so that he could drive her home. The Defendant went to the bar and drove Brown home in her van. He dropped her off at approximately 1:00am and she went to sleep. She was eventually awakened by her phone ringing and called the Defendant's cell phone to determine where he was. Simmons answered the phone and told her that he had been pulled over. At this point, an officer who she could not identify[3], spoke with her and explained what had happened. He asked for permission to search her van and she inquired as to what would happen if she refused. She believes that he spoke of obtaining a warrant. At that point, she consented to a search, telling the officer either "yes" or "ok." Brown testified that Simmons had permission to use her van that evening. She also stated that if, on some other occasion the Defendant had requested to use her vehicle, she would have consented.

---

[3] According to Officer Maley's testimony, he spoke with Ms. Brown.

Aleem Shadere Qyshawn Harden testified that he is an acquaintance of the Defendant's who observed part of the traffic stop from his house. He stated that he was in his room when he noticed flashing lights and came outside and saw the Defendant on his phone. He testified that there were at least seven officers at the scene. Harden attempted to approach Simmons to see if he needed assistance but was told to leave by one of the officers. He then returned to his porch and continued to watch what transpired. Harden testified that he saw the officers search the van three times and that he saw one officer on the Defendant's cell phone prior to the third search. It was after this third search that an officer emerged with an ashtray. He was unable to hear conversations and did not know what the officers were doing in the van.

III. Discussion

In his motion to suppress, Simmons argued that the crack cocaine should be suppressed because Officer Maley did not have voluntary consent to search the vehicle and because Simmons protested the search. After the hearing, the Defendant contended that while it appeared that Brown consented to the search, her consent could not be voluntary because she was under the influence of alcohol. He also maintained that there was insufficient

probable cause to arrest him under the circumstances of the case. The Government contends that the consent was voluntary and that probable cause existed to arrest Simmons.  The Government also orally raised a question as to the Defendant's standing to contest the search.

### A. Voluntary Consent

"...[O]ne of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043, 36 L. Ed. 2d 854 (1973).  It is the Government's burden to demonstrate that "...the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied." *Bustamonte*, 412 U.S. at 248, 93 S. Ct. at 2059.  Whether consent is voluntary is to be determined by examining all of the circumstances surrounding the grant of consent.  *Bustamonte*, 412 U.S. at 248-9, 93 S. Ct. at 2059.

Simmons argues that Brown was too intoxicated to give voluntary consent.  However, the testimony at the hearing shows otherwise.  Officer Maley testified that there was no indication during his conversation with Brown that she was impaired. Further, Brown clearly remembered what transpired during the early

7

morning hours of January 8, 2006.  While she could not remember if she said "ok" or "yes" when asked by Officer Maley for her consent to search the van, she testified that she did give consent. Although she may have been too intoxicated to drive, this does not mean that her consent was invalid.  *See United States v. Leland*, 376 F. Supp. 1193, 1199 (D.Del. 1974)(finding that the Defendant's consent to search his vehicle was valid even though he was too intoxicated to drive).  There was no testimony or evidence presented to indicate that Brown could not voluntarily consent to a search of her van.  We also note that there was no evidence presented to support the Defendant's claim that he protested the search of the vehicle.

    B.   <u>Probable Cause</u>

The Defendant also maintains that under these circumstances, the police did not have probable cause to arrest him.  First, we have already found that Brown gave valid consent to search the van.  Second, it is clear that Officers Maley and Rietheimer detected the odor of burnt marijuana in the vehicle. This alone would have given the probable cause to search the van. *United States v. Ramos*, 443 F.3d 304, 308 (3d Cir. 2006)("It is well settled that the smell of marijuana alone, if articulable and particularized, may establish not merely reasonable suspicion, but

probable cause."). The search led to the discovery of ash and the end of a marijuana blunt in the ashtray. Officer Maley's testimony is that the material in the end of the blunt field tested positive for marijuana. There is no evidence to contradict this. Rather, the lab report confirmed the presence of marijuana in the samples sent to them by Officer Maley. The presence of contraband, in this instance marijuana, provides the probable cause needed to arrest the Defendant. *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002)("Probable cause exists whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested.")(*citing Beck v. Ohio*, 379 U.S. 89, 91, 85 S. Ct. 223, 13 L. Ed. 2d 142 (1964)). Thus, the search incident to arrest, in which the crack cocaine was discovered, is valid.

    C.  <u>Standing</u>

    Finally, at the close of the suppression hearing, the Government questioned whether Simmons would have standing to contest the search of van since it was Brown's vehicle and she had given Officer Maley consent to search it. It is not entirely clear whether the Government is questioning the Defendant's

standing to object to the search when it occurred or his standing to raise the issue at the suppression hearing.  However, since the testimony at the hearing demonstrated that Simmons had permission to drive the van at the time in question, we conclude that he has standing to contest the search.  *See United States v. Baker*, 221 F.3d 438, 442-3 (3d Cir. 2000)(collecting cases).

        We will enter an appropriate order.

        /s/William W. Caldwell
        William W. Caldwell
        United States District Judge

Date: May 9, 2006

```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA,      :
      Plaintiff
                               :

      vs.                      :   CRIMINAL NO. 1:CR-06-041

                               :
CEDRIC D. SIMMONS,
      Defendant                :
```

O R D E R

AND NOW, this 9th day of May, 2006, it is Ordered that the Defendant's motion to suppress (doc. 21) is denied.

```
                              /s/William W. Caldwell
                             William W. Caldwell
                             United States District Judge
```